UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FREDRIC P. CASTAGNA, CARL LEE
GRANT, LAWRENCE PODWILL, and
CHRISTOPHER SAUNDERS, on behalf of            Civil Action No. 09 CV 10211
themselves and other employees                         (LTS) (HBP)
similarly situated,
            Plaintiffs,

            -against-

MADISON SQUARE GARDEN, L.P.,
            Defendant.
--------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, PRELIMINARY APPROVAL OF SETTLEMENT, APPOINTMENT OF PEDOWITZ & MEISTER, LLP AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION PROCEDURE**

      Plaintiffs Fredric P. Castagna, Carl Lee Grant, Lawrence Podwill and Christopher Saunders ("Plaintiffs" or "Class Representatives") respectfully submit this memorandum in support of their motion to conditionally certify this wage and hour case as a class action pursuant to Federal Rules of Civil Procedure Rule 23 and for preliminary approval of a proposed settlement agreement. Defendant Madison Square Garden, L.P. ("Defendant" or "MSG") has agreed to the terms of the settlement and not to oppose this motion.

## I. INTRODUCTION

      Class Representatives submit this motion to conditionally certify a settlement class of certain persons employed by Defendant as Security Officers between December 16, 2003 and June 6, 2010 and preliminarily approve a proposed settlement of this action to recover unpaid overtime brought on behalf thereof. The settlement will resolve all claims before this Court. The proposed compromise is set forth in a settlement agreement dated as of December 16, 2010 ("Agreement"), attached as Exhibit 1 to the Meister Declaration.

      The Class Representatives ask the Court to enter the proposed Order ("Order")(attached as an Exhibit to the Notice of Motion): (1) finding that the proposed settlement class meets the requirements for class certification under Rule 23; (2) preliminarily approving the Agreement, (3) appointing the four named Plaintiffs as Class Representatives for the purposes of prosecuting the state law claims on behalf of the proposed class; (4) appointing Plaintiffs' attorneys as Class Counsel; (5) approving the Notice of Class Action Lawsuit, Settlement and Fairness Hearing form ("Notice of Settlement"), attached as Exhibit "A" to the Order and to the Agreement; (6) directing Class Counsel to mail the Notice of Settlement to the proposed settlement class using

1

the employees' addresses as they are maintained by the Defendant within 10 days following the Court's Order; (7) setting a deadline of 45 days from the date of mailing of the Notices of Settlement for class members to opt out of, or exclude themselves from, the proposed settlement class; (8) setting a deadline of 45 days from the date of mailing of the Notices of Settlement for class members to object to the settlement; and (9) scheduling a hearing at the Court's convenience at least 75 days after the entry of the Order, at which the Court will consider the Plaintiffs' motion for (i) final approval of the settlement, (ii) entry of their proposed final judgment, and (iii) approval of incentive payments to the Class Representatives and Class Counsel's application for an award of attorneys' fees and reimbursement of costs.

## II. BACKGROUND

Plaintiffs filed this action on December 16, 2009, alleging wage and hour violations under the FLSA and New York's Labor Laws.[1] A copy of the amended complaint is attached to the Meister Declaration as Exhibit 2. The amended complaint's proposed class consisted of: "all individuals employed in the State of New York by Defendant as security officers and/or guards, at any time during the six years prior to the filing of the original Complaint in this case". The amended complaint seeks, *inter alia*, recovery of back pay for all unpaid overtime, liquidated damages, penalties, interest, attorneys' fees, costs, and equitable relief.

After Defendant appeared in the action, the parties met and conferred about both the legal issues and the factual bases underlying the claims. Throughout the course of the action, Plaintiffs' counsel and Defendant's counsel vigorously investigated the asserted claims and proffered defenses.

As part of the investigation, Defendant produced volumes of computerized records of every payroll entry (listing each occasion worked) for each of the more than 700 employees who worked as a security officer for Defendant during the period December 16, 2003 through June 6, 2010. Defendant also produced documents demonstrating the lengths of the MSG shows at which the proposed settlement class members worked during 2007, 2008 and 2009, as well as the total number of such occasions worked by the proposed settlement class members.

Plaintiffs' counsel reviewed and analyzed all of these data, and created complex spreadsheets and formula which they used to calculate the unpaid overtime owed by Defendant to the proposed settlement class members. In addition, Plaintiffs' counsel solicited from the Class Representatives and various proposed settlement class members pay stubs and other documents including personal diaries, work logs, and time sheets, which the Class Representatives and several proposed settlement class members maintained, showing the number of hours they worked for Defendant, as well as their hourly rate information, daily and weekly time and pay entries, W-2 forms, dates of hire and discharge, wage stubs, and other wage records. Plaintiffs' counsel analyzed these materials, data and payroll information as well, and utilized same to cross-check the records produced by Defendant. No substantial discrepancies were found. In addition, Plaintiffs' counsel interviewed the Class Representatives and many of the proposed settlement class members who had knowledge of the facts relevant to this action.

---

[1] The complaint was amended on April 20, 2010.

2

The interviews and the production and review of the payroll and other records and data facilitated meaningful and productive settlement discussions.

At all times throughout the action, Defendant continued to deny any liability or wrongdoing of any kind associated with the alleged claims. Defendant further contended, among other things, that it complied with the FLSA and all stage wage and hour laws. The Class Representatives, however, believe they have a meritorious action based on alleged violations of the FLSA, and NYLL wage and hour laws.

In their efforts to achieve a settlement, Plaintiffs' counsel met on multiple occasions with Defendant's counsel, exchanged legal research, factual analyses and letter briefs and engaged in substantial negotiations. Afterwards, the parties participated in a mediation conducted by Columbia Law School Professor Vivian Burger, an experienced employment mediator, in an attempt to resolve the issues presented by this action.

Prior to the mediation, the parties each submitted a confidential position statement to the mediator. Plaintiff's position statement contained their legal and factual arguments that MSG violated the FLSA and the New York Labor Law by failing to pay all legally required overtime. It also included spreadsheets calculating damages under different analyses reflecting contested interpretations of how the law applied to the facts. Similarly, the Defendant's position statement contained its legal and factual arguments in support of its defenses to the claims asserted.

The mediation was held for a full day on September 28, 2010, at the offices of Plaintiffs' counsel, and the participants were the mediator, all the Class Representatives, a representative of Defendant, as well as Defendant's counsel and Plaintiffs' counsel. A week thereafter, the mediator presented an economic proposal to both sides, to which the parties agreed in principle on October 5, 2010. Thereafter, counsel drafted and negotiated the Agreement that ultimately resolved other issues.

## THE PROPOSED SETTLEMENT

### A. Settlement Class

The proposed settlement has been reached on behalf of the proposed settlement class ("Settlement Class") defined in the Agreement as: "all individuals who were employed by MSG as security officers at any time between December 16, 2003 and June 6, 2010", (the date of the last data MSG provided)(the "Class Period").

### B. Settlement Consideration

The Agreement provides that Defendant shall pay a total settlement amount of one million three hundred thousand dollars ($1,300,000)(the "Total Settlement Amount") and that MSG will also pay the employer portion of required payroll taxes on the portion of the distribution to the Settlement Class that is deemed to be wages. The Total Settlement Amount is, of course, a compromise figure. It took into account what the parties believes were risks regarding proof of wages owed and other defenses asserted by Defendant. The Class Representatives and Plaintiffs' counsel also considered the effect of time and delay that would

result from a trial on issues of liability and damages and a possible appeal, as well as Defendant's expressed intent to vigorously contest Plaintiffs' claims if the litigation does not settle. Although the Class Representatives and Plaintiffs' counsel believe that their claims have merit, they recognize that the case presents numerous issues that would affect the amount of any recovery. In light of the strengths and weaknesses of the case, the Class Representatives and Plaintiffs' counsel believe that the settlement is reasonable because it achieves a significant benefit for the Settlement Class Members where failure on one or more issues at trial or on appeal is possible.

Based on Plaintiffs' counsels' assessment, the Total Settlement Amount represents approximately 70% of the Settlement Class' recoverable damages under a "best possible case" analysis assuming, *inter alia*, (1) the Rule 23 class was certified; (2) the collective action was and remained certified; (3) the Court would find that because the parties' Collective Bargaining Agreements define the one-hour lunch break during shifts as "work", that said break was compensable work time, and (4) that the Court would rule that the settlement class is entitled to NY Labor Law liquidated damages and New York State 9% prejudgment interest during the 3-year period that the settlement class is also entitled to FLSA liquidated damages. The Total Settlement Amount also represents approximately 119% of the Settlement Class' recoverable damages under a "worst possible case" analysis, assuming the Court were to rule that the lunch breaks during shifts were not compensable work time and that New York Labor Law remedies were not available during the FLSA period.

The Agreement provides that, subject to Court approval:

- Members of the Settlement Class, without having to file a proof of claim or a claim form, will receive an award based on the amount of unpaid overtime he/she worked during the Class Period.
- Plaintiffs' counsel ("Class Counsel") will be paid from the Total Settlement Amount a contingent fee equal to 30% of the Total Settlement Amount, or $390,000. This percentage is 3.33% lower than the 33.33% contingency that the named Plaintiffs agreed to in the Retainer Agreement entered into with Plaintiffs' counsel. The Agreement further provides that in the event that the combined Percentage Allocation Numbers (as that term is defined in the Agreement) of all Settlement Class members who opt out of the settlement total more than 5% of the total of all Percentage Allocation Numbers, then Class Counsel's fees shall be reduced to an amount equal to the lesser of (i) $390,000 or (ii) $433,000 multiplied by a fraction, the numerator of which is the sum of all Percentage Allocation Numbers of those Settlement Class members who did not opt out, and the denominator of which is the sum of all Percentage Allocation Numbers.
- Class Counsel will be reimbursed for litigation costs and expenses not to exceed $20,000, to be paid from the Total Settlement Amount;
- Individual incentive payments will be paid from the Total Settlement Amount to the Class Representatives totaling Forty-Five Thousand Dollars ($45,000.00), paid out of the Total Settlement Amount.
- After subtracting the amounts allowed by the Court for attorneys' fees, litigation costs and expenses and incentive payments, the balance of the Total Settlement Amount (the "Net Settlement Amount") will be divided among the Settlement Class on a pro-rata basis

determined proportionally to how much unpaid overtime each Settlement Class member worked for Defendant during the Class Period.  Settlement Class members who do not opt out will receive an amount equal to the Net Settlement Amount multiplied by the percentage of the total unpaid overtime he/she worked out of the total unpaid overtime worked by all Settlement Class members, which percentages have been agreed and are set forth in Exhibit B to the Agreement.  Of these amounts, half are deemed wages, from which Defendant will withhold relevant taxes, and the other half are deemed interest.

### C.  Release of Claims

In return for the above, the Settlement Class will release all wage and hour claims they have under state and federal law against the Defendant and all MSG Releasees (as defined in the Agreement) through December 13, 2009, the date on which all terms of the Agreement were agreed by counsel for both parties.  Settlement Class Members will retain any claims unrelated to their wage and hour claims, except that the Class Representatives will be releasing all employment claims against the MSG Releasees.

## III. PRELIMINARY SETTLEMENT APPROVAL

### A.  The Role of Court

Fed. R. Civ. P. Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir., 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context").  Approval of a proposed settlement is a matter within the broad discretion of the district court.  *See e.g. Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir., 1995); *In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, at 429 (S.D.N.Y., 2001)(McMahon, J.)("approval of the settlement is within the court's broad discretion"); *In re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y., 1997)(Sweet, J.)("Where the proposed settlement appears to be the product of serious, informed, non-conclusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted").

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing*". In re Initial Pub. Offering Securities Litigation*, 226 F.R.D. 186, 191 (S.D.N.Y., 2005)(Scheindlin, J.)(internal citations omitted).  Class members who have not opted out may then present arguments and evidence for and against the terms of the settlement before the Court decides whether the settlement is fair, reasonable and adequate. *Id*.

In addition, employees' FLSA claims for back wages may not be compromised absent either supervision by the Secretary of Labor or approval by the Court.  *See* 29 U.S.C. § 216(c); *Simel v. JP Morgan Chase,* 2007 WL 809689, at *4 (S.D.N.Y., 2007)(Daniels, J.).

### B.  The Proposed Settlement Class May be Certified

Prior to granting preliminary approval of a settlement, the court determines whether the proposed settlement class is a proper class for settlement purposes.  *See e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)(courts examine whether the proposed class would be adequately represented and fairly treated by a class action settlement).

The court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites in Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig*., 280 F.3d 124, 132-33 (2d Cir 2001).  To establish a class under Rule 23(b)(3), it must be shown that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy".  Fed. R. Civ. P. 23(b)(3).

In certifying a settlement class, the court is not required to determine whether the action, if tried, would present intractable management problems. *Amchem Prods.*, *supra,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial")(internal citations omitted).  Rather, whether to certify a class rests in the court's discretion.  *See In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 429 (S.D.N.Y., 2001)(McMahon, J.)("All aspects of settlement approval …rest in the sound discretion of the district court.").

#### 1.  Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)

Plaintiffs have satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23(a).

##### a.  Numerosity is Satisfied

Based on Defendant's payroll records the Settlement Class comprises more than 700 members.  Thus, the Settlement Class is so numerous that joinder of all Settlement Class members is impracticable.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F3d 473, 483 (2d Cir. 1995)(numerosity is presumed at a level of 40 members).

##### b.  Commonality is Satisfied

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 181 (W.D.N.Y., 2005).  There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394

(S.D.N.Y., 1986)(Brieant, J.).  Courts construe the commonality requirement liberally.  *Frank, supra*, 228 F.R.D. at 181.

This case involves common factual and legal issues: (1) whether MSG employed the Class Representatives and the Settlement Class members within the meaning of New York's Labor Laws and the FLSA; and (2) whether MSG's practices, policies, and procedures resulted in the Settlement Class members not having been paid time-and-a-half for overtime work they performed, in violation of the FLSA and New York Labor Laws.

These alleged overtime violations – involving common operative facts stemming from corporate policies and facts that affected the Settlement Class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor.  *See Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *2 (S.D.N.Y., Jan. 6, 2010)(Cedarbaum, J); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *2 (S.D.N.Y., May 28, 2009)(Freeman, MJ); *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, 2009 WL 5851465, at *3 (S.D.N.Y., Mar. 31, 2009)(Crotty, J).

### c.  Typicality is Satisfied

Similarly, the typicality requirement is satisfied here because Plaintiffs' claims arise from the same "course of events" – namely whether MSG's payroll practices complied with federal and state wage laws – as those of the Settlement Class members and rely on "similar legal arguments" to prove MSG's liability.  *See Robinson v. Metro North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001); *Diaz v. Eastern Locating Service, Inc.*, 2010 WL 294-5556 (S.D.N.Y., July 2010)(Francis, MJ)(finding typicality when plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the class members' claims, practices and procedures.).

### d.  Adequate Representation is Satisfied

Finally, Fed. R. Civ. P. (23)(a)(4) is satisfied here because the Class Representatives are not antagonistic or at odds with the Settlement Class members.  The Class Representatives have no known conflicts with any Settlement Class members, have diligently, fairly and adequately represented and protected the interests of all Settlement Class Members in achieving this settlement, and retained counsel who are qualified and experienced in class action and employment litigation.  *See Diaz v. Eastern Locating Services, Inc.*, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010)(Francis, MJ); *Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *2 (S.D.N.Y., Jan. 6, 2010)(Cedarbaum, J); *Toure v. Cent. Parking Sys.,* 2007 WL 2872455, at *4 (S.D.N.Y. Sept. 28, 2007)(Pauley, J).

### The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Certification is appropriate because, as set forth above, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.  Specifically, the questions of law and fact common to all Settlement Class members are described above.  These common questions predominate over any individual issues such as the nature and extent of damages.  *See In re Visa Check/Mastermoney Antitrust Litig*., 280 F.3d 124, 139 (2d Cir 2001)("Common issues may

predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues"); *Diaz v. Eastern Locating Services, Inc.*, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010)(Francis, MJ); *Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *2 (S.D.N.Y., Jan. 6, 2010)(Cedarbaum, J); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *2 (S.D.N.Y., May 28, 2009)(Freeman, MJ); *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, 2009 WL 5851465, at *3 (S.D.N.Y., Mar. 31, 2009)(Crotty, J).

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class members is impracticable. Moreover, as the damages suffered by individual members of the Settlement Class are relatively small as compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Settlement Class members to individually redress the harm done to them. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y., 2001)(Hellerstein)("[t]he interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest by individual members to bring and prosecute separate actions").

In sum, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval to the settlement.

### 2. The Court Should Appoint Plaintiffs' Counsel As Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (i) work "in identifying or investigating potential claims in the action"; (ii) "experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (iii) "knowledge of the applicable law"; and (4) resources that will be committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Class Counsel here conducted a thorough pre-filing and continuing investigation and vigorously prosecuted the lawsuit and negotiated a settlement that provides prompt and valuable relief to the Settlement Class. *See Baffa v. Donaldson, Lufkin & Janrette Securities Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)(class counsel will be deemed adequate if it has no conflicts to any class member and if they are qualified, experienced and able to conduct the litigation).

Robert A. Meister and David Harrison of Pedowitz & Meister, LLP, are competent litigators who have experience in handling class and employment actions as well as other complex and multi-party litigation.

Mr. Meister has been a member of the Southern District Bar since 1963 and has extensive trial experience in this District and in other districts as well as in state courts. He has served as counsel in class action and other complex litigations, as well as in other wage and hour and employment litigations. He has been a partner at Pedowitz & Meister, LLP for the last five years, and prior thereto he was a partner in the firm now known as DLA Piper US, LLP from

1995 - 2006. Prior to joining DLA Piper, Mr. Meister was a member of, and served as the head of the litigation department at, a firm known as Milgrim, Thomajan, Jacobs & Lee PC, a/k/a Varret & Fink, PC, for 23 years. Before that he was a litigation attorney for 10 years at Dewey, Balentine, Bushby, Palmer & Wood. He has lectured on employment law, civil procedure and trial practice, has been an Adjunct Professor of Law at Cardozo School of Law since 1999 and is listed in Marquis' Who's Who in America and in Marquis' Who's Who in American Law.

Mr. Harrison was admitted to the Florida Bar in 2004 and to the New York Bar in 2005 and since then has concentrated in plaintiffs-side employment litigation at Pedowitz & Meister, LLP, and its predecessor. He has served as plaintiffs' counsel in numerous employment law litigations, including several wage and hour class action litigations, and has lectured in the area of employment law.

Plaintiffs' counsel spent significant time investigating the Class' claims, and committed themselves to the expenditure of significant resources that were necessary to achieve a favorable result for the Class. Therefore, the Court should appoint the undersigned to serve as Class Counsel for the Settlement Class pursuant to Rule 23(g).

### C. Criteria To Be Considered In Deciding Preliminary Approval

After certifying the Settlement Class, the court determines whether to preliminarily approve the settlement by making "a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation, Fourth*, § 21.633. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of reasonableness." *Id.* § 40.42.

Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Torres v. Gristede's Operating Corp., Slip Copy*, 2010 WL 2572937 (S.D.N.Y., June, 2010)(Crotty, J.) citing Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (4th ed. 2002). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the court finds that it appears to fall "within the range of possible approval," the court should order that the class members receive notice of the settlement. *Diaz v. Eastern Locating Service, Inc.*, 2010 WL 2945556, at *1 (S.D.N.Y. July 22, 2010)(Frances, MJ). *See also Danieli v. IBM,* 2009 WL 6583144 at *4 (S.D.N.Y. ,Nov.16, 2009)(Stein, J)(granting preliminary approval where settlement "has no obvious defects" and " is within the range of possible settlement approval such that notice to the class is appropriate").

It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement." *In re Initial Pub. Offering Securities Litigation*, 226 F.R.D. 186, 191 (S.D.N.Y., 2005)(Scheindlin, J.). Accordingly, a district court reserves the ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have

had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *In re Prudential Securities Incorporated Limited Partnerships Litigation*, 163 F.R.D. 200, 210 (S.D.N.Y., 1995)(Pollack, J.)(noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the class members").

"It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential Securities Incorporated Limited Partnerships Litigation, supra*, 163 F.R.D. at 209; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir., 2005)("the compromise of complex litigation is encouraged by the courts and favored by public policy"); *Cohen v. J. P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y., Sept. 24, 2009). ("[t]here is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy"); *In re Luxottica Group S.P.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y., 2006)("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation"). "[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits." *Saylor v. Lindley*, 456 F.2d 896, 904 (2nd Cir., 1972)(internal citations omitted). Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See e.g., In re Global Crossing Securities and ERISA Litigation,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004)(Lynch, J)("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation")(internal citations omitted); *In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 430 (S.D.N.Y., 2001)(McMahon, J.)("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight").

### 1. There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The Product of Extensive, Arm's Length Negotiations

The criteria for evaluating a request for preliminary approval have been summarized as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Prudential*, *supra,* 163 F.R.D. at 209 (quotation omitted). Under these criteria, the Court should grant preliminary approval of the proposed settlement and order the dissemination of notice.

Moreover, where a settlement is the by product of a mediation, there is a presumption of fairness and arms-length negotiations. *See Diaz v. Eastern Locating Service, Inc.*, 2010 WL

2945556 (S.D.N.Y., July 22, 2010) (Frances, MJ)("the assistance of an experienced mediator . . . reinforces that the settlement agreement is non-collusive").

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive ('arm's-length') negotiations." *Cohen v. J. P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y., Sept. 24, 2009). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecute the case and negotiated the settlement at arms-length. *See Initial Public Offering Sec. Litig.*; 243 F.R.D. 79, 83 (S.D.N.Y. 2007)(Scheindlin, J.)("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery")(internal citations omitted).

The proposed settlement here is the product of extensive hard-fought, arm's length negotiations, after meaningful discovery, and as discussed above, mediation before an experienced mediator. Based on their familiarity with the factual and legal issues, and with the assistance of the mediator, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation, that the Class Representatives and Plaintiffs' Counsel believe to be in the best interests of the Settlement Class.

## 2. The Settlement Contains No Obvious Deficiencies

The proposed settlement has no obvious deficiencies. The Net Settlement Amount will be shared by those who actually worked the underpaid overtime in proportion to their underpaid hours. The settlement provides only modest enhancement awards not to exceed $45,000 for the Class Representatives who were instrumental in bringing, investigating, prosecuting and facilitating a resolution of this matter. These awards are reasonable in light of the overall benefit conferred on the Settlement Class. *See Bah v. Shoe Mania*, 09-CV-4016, 09-CV-4017, 09-CV-7666 (LTS)(Unpublished May 18, 2010 Order preliminarily approving six enhancement payments in the amount of $15,000 each out of a $1,150,000 settlement fund); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580 (S.D.N.Y., Aug. 23, 2010)(Batts, J.)(approving incentive awards in the aggregate of $25,000 paid to 5 Class Representatives out of an $800,000 settlement); *Gillian v. Addicts Rehab. Center Fund*, 2008 WL 782596 (S.D.N.Y.) (Ellis, MJ) (approving aggregate incentive payment of $16,500 for six named plaintiffs out of a $450,000 settlement fund).

Finally, the settlement does not mandate excessive compensation for Class Counsel. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses, equal to 30% of the Total Settlement Amount. This percentage is "within the range of reasonable attorney fees awarded in the Second Circuit." *See Prasker v. Asia Five Eight LLC*, 2010 WL 476009 (S.D.N.Y.) (Cedarbaum, J.)(approving attorneys fees of $346,500, which is 33% of the $1,050,000 settlement fund); *Clark v. Ecolab Inc.*, 2010 WL 1948198 (Crotty, J.)(approving attorneys fees of $2 million, comprising 33 1/3 % of the $6 million settlement fund); *Duchene v. Michael Cetta*, 2009 WL 5841175 (Crotty, J.)(approving attorneys fees of $1,015,000, which is 32.2% of the $3.15 million settlement fund, and 33 1/3rd of the settlement amount less the service payments).

Further, this is $39,000 less than the attorney's fees would have been under the 33% contingency agreed to by the named Plaintiffs at their original retention of counsel.

### 3. The Settlement Falls Within The Range Of Possible Approval

As explained above, the proposed settlement was reached only after protracted arms' length negotiations and ultimately, mediation between the parties and their experienced counsel who considered the advantages and disadvantages of continued litigation. Plaintiffs' counsel believes that this settlement achieves all of the objectives of the litigation, namely a substantial monetary settlement to the Settlement Class for MSG's alleged failure to fully pay them overtime wages. Plaintiffs' counsel have carefully evaluated the merits and risks of this case and the proposed settlement. If the matter were to proceed to trial, Plaintiffs' counsel recognizes that the apparent strength of Plaintiffs' claims is no guarantee of a recovery [*fix this sentence*]. Furthermore, even if a judgment were obtained against MSG at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed settlement.

In light of the above considerations, the proposed settlement as a whole falls within the range of possible final approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Settlement Class.

## IV. THE PROPOSED PLAN OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort". Fed R. Civ. P.23(c)(2)(B); *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974)("each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action").

Rule 23(e)(1) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal". Fed. R. Civ. P. 23(e)(1). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness". *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113 (2d Cir., 2005)(internal citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings". *Id*. at 114 (internal citations omitted). Notice is "adequate if it may be understood by the average class member". 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:53, at 167 (4th ed. 2002).

Here, Class Counsel will mail the Notice of Settlement (attached as Exhibit "A" both to the Order and to the Agreement) via first class mail to all Settlement Class members, at their last known addresses as maintained by MSG. For each Notice of Settlement returned to Class Counsel as undeliverable, Class Counsel will endeavor to ascertain a current address for each

such Settlement Class member using computer search databases and additional information provided by MSG.  Those individuals whose current addresses are found will be sent an additional copy of the Notice of Settlement.   The proposed method of notice therefore comports with Rule 23 and the requirements of Due Process.

As for the content of the notice, Rule 23(c)(2)(B) provides:

The notice [to a rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through counsel if the member so desires;
(v)     that the Court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on class members under Rule 23(c)(3).

Where notice is being sent in connection with a proposed settlement, "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart, supra,* 396 F.3d at 114 (internal citations omitted).

The proposed Notice of Settlement, attached as Exhibit "A" to both the Order and to the Settlement Agreement, comports with the requirements set forth above in all respects.  To that end, the proposed Notice of Settlement: (1) describes the nature, history, and status of the action; (2) sets forth a clear definition of the proposed Settlement Class; (3) explains the bases for the claims and issues; (4) clearly provides that Settlement Class members may enter an appearance through their own counsel; (5) discloses the right of the people who fall within the definition of the Settlement Class to exclude themselves from the settlement; (6) specifies the deadline and procedure for requesting exclusion; and (7) warns of the binding effects of the settlement approval proceedings on those persons who do not exclude themselves from the Settlement Class.  In addition, the Notice of Settlement clearly describes the terms of the settlement, and the relief available to Settlement Class members, as well as how individual recoveries will be calculated.

The proposed Notice of Settlement also provides clear notice that the Parties have agreed upon compensation for Class Counsel, in the form of attorneys' fees and reimbursable litigation costs and expenses, and advises Settlement Class members that the award of attorneys' fees and reimbursable litigation costs and expenses to Class Counsel will affect the benefits available to Settlement Class members.

Finally, the Notice of Settlement also provides contact information for Class Counsel, summarizes the reasons the parties are proposing the settlement, discloses the date, time and

place of the formal Fairness Hearing, and describes the procedures for objecting to the settlement and appearing at the Fairness Hearing.

The Notice of Settlement contents thus satisfy all applicable requirements. Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Settlement Class.

### V. **APPROVAL OF THE FLSA SETTLEMENT**

Plaintiffs will seek approval of the settlement of the FLSA claims separately from their Rule 23 claims. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same Due Process concerns as does a Rule 23 settlement. *See McKenna v. Champion Int'l Corp*., 747 F.2d 1211, 1213 (8th Cir.1984)(explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date"). When Plaintiffs file their Motion for Final Approval of the Settlement, they will seek approval of the FLSA settlement.

### VI. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant preliminary approval of the proposed settlement and enter the proposed Order submitted herewith.

Date:  New York, New York
       January 3, 2011

PEDOWITZ & MEISTER, LLP

By:  /s/_____
Robert A. Meister (RAM 7408)
David Harrison (DH 3413)
1501 Broadway, Suite 800
New York, NY 10036
Tel: (212) 403-7320
Fax: (212) 354-6614
*Attorneys for Plaintiffs*